UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

UNITED STATES OF AMERICA          3:19-CR-0391

VS.          JUDGE TERRY A. DOUGHTY

JAVARIS MARQUEZ TUBBS          MAG. JUDGE KAYLA D. MCCLUSKY

## MEMORANDUM RULING

Defendant Javaris Marquez Tubbs moves for a reduced sentence under 18 U.S.C. § 3582(c)(1)(A)(i). [doc. # 94]. The United States of America (hereafter, "the Government") opposes the motion. [doc. # 104]. For reasons below, Tubbs' motion is denied.

## Background

On December 22, 2005, Tubbs was charged in a superseding indictment with one count of armed bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d); and one count of use of firearm in violation of 18 U.S.C. § 924(c)(1). [doc. # 1-1, p. 5]. On or about April 14, 2005, Tubbs robbed Washington Mutual Bank located at 8725 Elk Grove Blvd., Elk Grove, California, where he stole $14,494.00. [doc. # 1-2, p. 2]. During the robbery, Tubbs assaulted and put the lives of bank employees in jeopardy by using a handgun. *Id.* at 3.

Trial for the matter commenced on May 9, 2006, and the jury rendered a verdict on May 16, 2006, finding Tubbs guilty on both counts. *Id.* at 7, 9. Tubbs was sentenced to a total of 192 months in prison—108 months for count one and 84 months for count two, to be served consecutively to the term imposed on count one. *Id.* at 2. Additionally, Tubbs was sentenced to 60 months of supervised release on each of counts one and two, to be served concurrently with each other. *Id.* at 3.

On July 19, 2019, Tubbs' supervised release began. [doc. # 3]. Despite being bound by standard, mandatory, and special conditions, Tubbs violated numerous terms of his supervised release. [doc. #s 3, 7]. He tested positive for marijuana on July 22, 2019, August 16, 2019, September 26, 2019, and October 15, 2019. [doc. # 3, p. 2]. Because marijuana is a controlled substance under federal law, Tubbs violated mandatory condition numbers two and three in addition to standard condition number seven of his supervised release. *Id.* at 1.

On November 18, 2019, Tubbs moved without notifying his probation officer, as required by the terms of his supervised release. *Id.* at 2. Considering he was not only required to report to his probation officer each Monday but also was required to inform the officer at least ten days prior to any change of residence, he violated standard condition numbers two and six. *Id.*

Tubbs also ceased participation in mental health counseling on November 11, 2019, and substance abuse treatment on November 18, 2019. *Id.* Since he was bound to both mental health and substance abuse treatment during his supervised release, he violated two special conditions. *Id.*

On December 13, 2019, jurisdiction of Tubbs' supervised release was transferred from the Eastern District of California to the Western District of Louisiana. [doc. # 1-1, p. 18]. On December 20, 2019, the probation officer filed a Petition for Warrant or Summons for Offender Under Supervision as to the violations above. [doc. # 3].

On or about March 17, 2021, Tubbs was arrested by the Fort Bend County (Texas) Sheriff's Office for the Unlawful Carrying of a Weapon and Possession of Marijuana. [doc. # 7]. On or about January 17, 2023, Tubbs was arrested in Oklahoma by the U.S. Marshal Service. *Id.* at 2. Given these arrests, the probation officer amended the Petition for Warrant or Summons for Offender Under Supervision. *Id.* at 1. Because Tubbs was outside of the judicial district (in

2

Texas and Oklahoma) without permission of the court or probation officer, he violated standard condition number one. *Id.* at 2. Additionally, the Texas arrest shows that Tubbs violated mandatory condition numbers two and three in addition to standard condition number seven since he was in possession of marijuana and a Glock 22 loaded with 15 rounds of 9 mm ammunition. *Id.* at 1-2.

On March 1, 2023, the Court entered a Final Revocation of Supervised Release. [doc. # 20]. Tubbs was sentenced to 36 months in prison for violating multiple conditions of his supervised release ordered on March 27, 2009. *Id.*

On February 8, 2024, Tubbs filed a Motion to Reduce Sentence Pursuant to 18 U.S.C. §§ 3582(a) and (c)(1)(A)(i). On April 1, 2024, the Court denied the motion. [doc. # 57].

Tubbs filed the instant motion on approximately February 11, 2025. [doc. # 70].

## Law and Analysis

"A defendant moving for compassionate release must establish both extraordinary and compelling circumstances *and* that the release is consistent with the § 3553(a) factors." *United States v. Santana-Cerano*, 2025 WL 817589, at *1 (5th Cir. Mar. 14, 2025).

**1. Sentencing Based on Desire for Mental Health Help**

Tubbs argues that this Court, in violation *Tapia v. United States*, 564 U.S. 319 (2011), "imposed a statutory maximum sentence of 36-months, based on the court's assessment and desire for the defendant to have enough time to get the help needed." [doc. # 70, pp. 4-6]. The Court, however, previously considered and rejected the same argument when Tubbs raised it in his previous motion to reduce his sentence. [doc. # 57, p. 8]. For the same reasons set forth in the Court's previous opinion, Tubbs' argument does not entitle him to a reduced sentence.

3

**2. Change in Law Based on Youthfulness**

Tubbs asks this Court to reduce his sentence because of an amendment to U.S.S.G. § 5h1.1, which, according to Tubbs, states that a "downward departure also may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses." [doc. # 70, p. 2]. Tubbs states that he did not receive the benefit of the amendment at his original sentencing in California, and he asks this Court to apply the amendment and reduce the sentence of incarceration imposed by the judge in the Eastern District of California. *Id.* at 2-3.

Tubbs, however, has completed the 2009 sentence of incarceration imposed in the Eastern District of California. Thus, his motion to reduce his original sentence of incarceration is moot. *See U.S. v. Garrett*, 2022 WL 2072856, at *1 (E.D. La. June 9, 2022) (citing *U.S. v. Wade*, 533 F. App'x 491 (5th Cir. 2013) ("'Where a defendant has begun serving a term of supervised release, the appeal of the denial of his § 3582(c)(2) motion is moot.'") (quoting *U.S. v. Booker,* 645 F.3d 328 (5th Cir. 2011)).

Even assuming it was not moot, this Court would lack jurisdiction to reduce the sentence imposed by the federal court in California. *Landazuri v. Hall*, 423 F. App'x 475, 476 (5th Cir. 2011) (per curiam)) ("[A] district court, other than the sentencing court, lacks jurisdiction to consider a § 3582(c) motion."); *Davis v. U.S.*, 124 F.4th 980, 984 (5th Cir. 2025) ("[T]his Court's precedent requires defendants seeking a Section 3582 sentencing reduction to file 'in the same docket that contains the prisoner's final judgment.' And when defendants have sought sentencing reductions under Section 3582 from courts other than the sentencing court, this Court has affirmed the district court's dismissal for lack of jurisdiction.") (quoted source omitted).

4

**3. Mental Health Treatment**

Tubbs seeks early release to obtain mental health treatment, stating that he is "suffering from mental health issues that require specialized care that" the Bureau of Prisons is not providing. [doc. # 70, pp. 1, 4]. Tubbs, however, does not present extraordinary and compelling circumstances.

"A district court may grant a motion for compassionate release under § 3582(c)(1) only if it finds, *inter alia*, that 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Austin*, 125 F.4th 688, 691 (5th Cir. 2025). Under 18 U.S.C. § 3582(c)(1)(A)(i):

> (c) The court may not modify a term of imprisonment once it has been imposed except that—
>
> > (1) in any case—
> >
> > > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> > >
> > > > (i) extraordinary and compelling reasons warrant such a reduction;
> > > > . . . .
> > > > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

The Fifth Circuit "understand[s] 'extraordinary' to mean 'beyond or out of the common order,' 'remarkable,' and synonymous with 'singular.'" *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023). "'Compelling' . . . means 'to drive or urge with force, or irresistibly,' 'to

5

force,' and 'to subjugate.'" *Id.* The terms 'extraordinary' and 'compelling' "explain why prisoners can seek relief under § 3582(c)(1) only when they face some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner." *Id.*

"Although not dispositive, the commentary to the U.S.S.G. informs our analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release." *United States v. Batiste*, No. 23-30582, 2024 WL 620373, at *2 (5th Cir. Feb. 14, 2024). Under FSG § 1B1.13(b), the following may be sufficiently extraordinary and compelling reasons: (1) certain medical conditions; (2) the age of the defendant; (3) family circumstances; and (4) defendants who were victims of abuse.

Relevant here, the following medical conditions can constitute extraordinary and compelling reasons:

> (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (B) The defendant is—
>
>> (i) suffering from a serious physical or medical condition,
>>
>> (ii) suffering from a serious functional or cognitive impairment, or
>>
>> (iii) experiencing deteriorating physical or mental health because of the aging process,
>>
>>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

FSG § 1B1.13(b)(1).

Here, Tubbs' ill-defined mental health "issues" do not qualify as extraordinary and compelling under the law above. He does not argue that his condition is "terminal," and he does

6

not argue that he is not expected to recover from his condition or that his condition substantially diminishes his ability to provide self-care. *See United States v. Rivas*, 833 F. App'x 556, 559 (5th Cir. 2020).

**4. Factors Under 18 USC § 3553(a)**

Even assuming *arguendo* that Tubbs presented sufficiently extraordinary and compelling reasons to justify reducing his sentence, the Court would still deny his motion after weighing the factors under 18 U.S.C. § 3553(a).

Tubbs' criminal history began when he was thirteen years of age and has continued to increase throughout his life, showing his propensity to commit crimes. He has been convicted of possessing controlled substances, obstructing and resisting a public officer, threatening with the intent to terrorize/vandalize, falsely identifying to peace officers, possessing bad checks, driving under the influence, and passing counterfeit checks. [doc. # 18, pp. 14-15]. His criminal history category was VI. *Id.* at 16.

In this case, Tubbs was convicted of two counts of Armed Bank Robbery, Aiding and Abetting in the Eastern District of California Docket 2:06CR00451-01; and another robbery and use of firearm convictions in Eastern District of California docket 2:05CR00243.

Tubbs also failed four drug screens for marijuana and left the judicial district without permission. This Court previously observed that Tubbs attempted to deceive the Court with a change of name and has essentially failed to comply "with anything." His behavior in this case is like *United States v. Huckle*, 839 F.App'x 940, 941 (5th Cir. 2021), where the court denied a compassionate release motion because the defendant had committed a serious offence, had a fairly lengthy criminal history, and denial was necessary to protect the public from future crimes.

7

As the Government highlights: "[Tubbs'] post-conviction conduct while on supervised release is even more troubling. As noted above, he quit reporting to his probation officer in 2019 and disappeared. Rec. Doc. 8. Tubbs left the district where he was arrested in Texas in 2021 with a loaded handgun and drugs. *Id.*"  [doc. # 78, p. 11].

The Court has considered Tubbs' contentions that he has had no disciplinary incidents since his 2023 sentencing, that he has completed multiple programs and classes, that he has made efforts at rehabilitation, that he has utilized his time for change, that he has a release plan, employment contacts, and an outpatient treatment plan, that he has served more than 75% of his sentence, and his custody level. However, reducing his sentence would not reflect the seriousness of his offense, promote respect for the law, provide just punishment, deter further criminal conduct, or protect the public. On balance, the factors under Section 3553(a), do not warrant a reduction in sentence. And, as above, he does not present extraordinary or compelling circumstances.

## Conclusion

For the reasons above, Defendant Javaris Marquez Tubbs' motion to reduce his sentence, [doc. # 94], is **DENIED**.

MONROE, LOUISIANA, this 7th day of April 2025.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE